**PACIFIC AMERICAN REAL ESTATE FUND, LTD. Pacific American Real Estate Fund 1972, Plaintiffs-Appellants,**

v.

**KANSAS CITY POWER & LIGHT COMPANY, Defendant-Respondent,**

v.

**FIRST MORTGAGE INVESTORS, Kansas City Inns, Inc., K.P.S. Management Corp., d/b/a K.P. Management Corp., et al., Defendants-Respondents.**

**No. WD 32595.**

Missouri Court of Appeals, Western District.

April 27, 1982.

Truman K. Eldridge, Jr., Joe B. Whisler, Kansas City, for plaintiffs-appellants.

Julia F. Blakeslee, Gordon D. Gee, Kansas City, for defendants-respondents, First Mortg. Investors and Kansas City Inns, Inc.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

KENNEDY, Judge.

Pacific American appeals from a summary judgment of the Circuit Court of Jackson County which held that a certain utility deposit of $30,000 which had been made with Kansas City Power & Light Company to secure electrical service to a downtown Holiday Inn hotel, belonged to Kansas City Inns, Inc.

Appellants Pacific American Real Estate Fund, Ltd., and Pacific American Real Estate Fund 1972 (a limited partnership, hereinafter referred to collectively as Pacific American), owned and operated three Holiday Inns in Kansas City, Missouri. For convenience we shall refer to them as the Downtown Holiday Inn, the Airport Holiday Inn and the Truman Corners Holiday Inn.

The contest in this case is over a $30,000 utility deposit made by Pacific American with Kansas City Power & Light Company. The issue is whether the deposit passed under a deed of trust and/or a security agreement, and by the foreclosure of the same, given by Pacific American to secure certain loans.

Pacific American was indebted to First Mortgage Investors, a trust, upon three promissory notes dated November 15, 1974, aggregating $7,428,454.72. The promissory notes were secured by separate deeds of trust upon the respective properties and by separate security agreements covering the personal property of the three hotel properties.

Pacific American defaulted in the payment of the promissory notes and First Mortgage Investors undertook to foreclose the same. On March 16, 1976, it filed in the Circuit Court of Jackson County and in the Circuit Court of Clay County simultaneous applications for the appointment of receivers to take control of and manage the properties. The Downtown and Truman Corners Inns were located in Jackson County and the Airport Inn in Clay County. The two courts appointed K.P. Management

Corporation of Kansas City as receiver of the three properties. The receiver promptly qualified, took possession of the properties and commenced the operation of the same. It continued to operate them under court supervision during the rest of the time involved in the present litigation.

On June 4, 1976, the parties, Pacific American on the one hand and First Mortgage Investors on the other, entered into a settlement agreement. The details of the agreement will be gone into later in the opinion, but broadly speaking, Pacific American by the terms of the agreement acknowledged its default in the payment of the promissory notes, surrendered its claim to the collateral, and gave consent for First Mortgage Investors to proceed with the receivership proceeding and the foreclosure. The parties mutually released all claims for personal liability. Pacific American was granted an option for a period of time to repurchase the Downtown Holiday Inn, and for an additional period of time a first refusal to purchase the same.

Thereafter, in pursuance of duly published notices of sale, the trustee in the respective deeds of trust conducted trustee's sales in foreclosure. The trustee's sales were held July 29, 1976. The properties were purchased by Kansas City Inns, Inc., a wholly owned subsidiary of First Mortgage Investors, for the unpaid principal amounts of the respective promissory notes. There is no dispute but that the trustee's deeds effectively conveyed the real estate and tangible personal property of the respective hotel properties.

The receiver on December 28, 1976, terminated its management of the affairs of the three hotel properties and turned the same over to Kansas City Inns, Inc. This termination of the receiver's duties, and the relinquishment of the business to Kansas City Inns, Inc., was ordered or ratified, by circuit court orders in the receivership proceedings on January 20, 1977.

The case now before us was filed by Pacific American against Kansas City Power & Light Company to recover utility deposits of $34,000 plus accumulated interest.

The action was filed August 8, 1979. The deposits had been made by Pacific American in order to secure electrical service to two of the motels—$30,000 for the Downtown Holiday Inn and $4,000 for the Airport Holiday Inn. (The Truman Corners Inn had deposited a bond in lieu of a cash deposit, and was never involved in the litigation. The parties have also stipulated that the utility company is liable only for the $30,000 deposited for the Downtown Holiday Inn, and the $4,000 deposited for the Airport Holiday Inn has dropped out of the case.) The deposits had been made in January, 1974. Pacific American alleged in its petition that it had notified Kansas City Power & Light on March 24, 1978, of its claim. Kansas City Power & Light interpleaded First Mortgage Investors and Kansas City Inns, Inc., along with others. First Mortgage Investors and Kansas City Inns filed their pleading claiming ownership of the deposits. The case is now boiled down to whether the deposits belong to plaintiff-appellant Pacific American or to Kansas City Inns, Inc., the purchaser upon foreclosure. Kansas City Inns, Inc., is a wholly owned subsidiary of First Mortgage Investors and their interests are identical.

Judge Mauer upon First Mortgage Investors' and Kansas City Inns' motion, granted summary judgment holding that Kansas City Inns was entitled to the deposits, and that Pacific American had no claim thereto.

That Pacific American originally made the deposits in January of 1974 is not disputed. The question is whether they passed to First Mortgage Investors, as collateral under the loan documents, then to Kansas City Inns, Inc., in fee under the foreclosure. Pacific American claims that the deposits did not pass under the security instruments to begin with, and that, even if they did pass under the security instruments, they were never transferred to Kansas City Inns in, or in connection with, the foreclosure proceedings. First Mortgage Investors and Kansas City Inns, on the other hand, claim that the deposits were included in the security agreements to collateralize the loan, and that they passed to Kansas City Inns in the

foreclosure. They say further, however, that if they did not so pass to First Mortgage Investors and Kansas City Inns, respectively, that Pacific American has waived its claim thereto or is estopped from asserting its claim thereto.

We find that the utility deposits were covered under the security agreements executed by Pacific American to secure its indebtedness to First Mortgage Investors, and then under the settlement agreement executed by the Pacific American and First Mortgage Investors. The trial court was correct in granting summary judgment so holding in favor of First Mortgage Investors and Kansas City Inns and against Pacific American.

*The Security Agreements.*

■ By the security agreements there was granted by debtor Pacific American to creditor First Mortgage Investors "a security interest . . . in all personal property and fixtures including goods, documents, instruments, general intangibles, chattel papers, accounts and contract rights (as such terms are defined by the Uniform Commercial Code) in which the debtor now has or hereafter acquires any right and the proceeds therefrom (hereinafter called the 'Collateral') presently including, but not limited to, the personal property and fixtures listed on Schedule 'A' attached hereto . . ." It is not necessary for us to decide whether the customer's claim to these deposits are "contract rights", as First Mortgage Investors argues. If they are not "contract rights" within the meaning of § 400.9–106, RSMo 1978, they are "general intangibles". The latter term means, according to the statute, "Any personal property (including things in action) other than goods, accounts, contract rights, chattel paper, documents and instruments". By the plain terms of the security agreements, Pacific American's rights in the utility deposits were included in the collateral.

Pacific American calls our attention to certain language in the deed of trust (not in the security agreement) which describes personal property "located in the building or upon the premises and used or usable in connection with any present or future occupancy of the building". It argues that the deposits were not located on the premises but rather were located at the Kansas City Power & Light Company premises. Therefore, it concludes, the deposits were not included in the deed of trust. Such limiting language, though, is not found in the security agreement, and particularly not in relation to "contract rights" or "general intangibles". Pacific American's argument is rejected.

■ Pacific American for a second position says that even if the deposits were included in the collateral given to secure the payment of the promissory notes, the fee title was never conveyed to First Mortgage Investors or Kansas City Inns. We find, however, that the settlement agreement entered into by Pacific American and First Mortgage Investors on June 4, 1976, along with the collateral documents executed by Pacific American in pursuance thereof, clearly expressed the purpose on Pacific American's part to surrender to First Mortgage Investors the general intangibles of the hotel properties, including the utility deposits which are now being contested.

We shall note the terms of the settlement contract presently, but first it is necessary to show the circumstances surrounding the execution of the same.

The debtor First Mortgage Investors had filed suit in the Circuit Courts of Jackson and Clay Counties for the appointment of a receiver for the hotel properties and businesses, in aid of foreclosure. The circuit courts on March 19, 1976, had entered ex parte orders appointing a receiver. The orders, identical except for the locations of the inns and the amounts of bond required of the receiver, had stated:

> . . . K. P. Management Corporation . . . is hereby appointed receiver of all the real and personal property, assets, and business known as the Holiday Inn, located at (the Jackson County order gave the location of the downtown property and the Clay County order gave the airport inn address) with full power and

authority, as such receiver, to take the same into its possession ...; to bring suit for, collect, receive and to take into its possession all the property and assets, real and personal, including books, papers, and securities.

The receiver duly qualified and took possession of the business. It filed periodic settlements with the court. The record before us contains three such settlements, the last one showing the state of affairs May 31, 1976. In each settlement the Kansas City Power & Light deposits of $30,000 for the Downtown Holiday Inn and $4,000 for the Airport Holiday Inn are specifically described as part of the assets of the business which the receiver had in its possession. It should be noted here that the broad, inclusive language of the orders appointing the receiver clearly authorized the receiver's taking charge of the utility deposits.

In this state of affairs, on June 4, 1976, Pacific American and First Mortgage Investors entered into their settlement contract. The contract recited that "the parties are desirous of settling the matters in controversy between them and of avoiding the cost and expense of further litigation". It stated that "the Trust Deed and the security documents executed in connection therewith created and constitute valid liens on the properties and created valid security interests in all fixtures and personal property located upon or used in connection with the properties". It recited that, in addition to the full principal amount of the notes, $7,428,454.72, none of which had been paid, there was owing to First Mortgage Investors "other amounts advanced by FMI and attorneys fees, plus interest on the foregoing at the rate of 4% per annum from June 1 to June 30, 1975 and at the rate of 8% per annum from July 1, 1975 to the date hereof." It provided that "PA '72 and PA Municipal acknowledge the propriety of the appointment of receivers in the Missouri proceedings, and do hereby expressly consent to such appointment and waive any and all rights to object thereto. PA '72 and PA Municipal hereby consent to, ratify and approve all operations and conduct to date of the receivers appointed for the properties by the courts in the Missouri proceedings."

On its part, First Mortgage Investors agreed that it would relieve Pacific American of any personal liability on the promissory notes, and would grant to Pacific American an option to repurchase the Downtown Holiday Inn for a certain price, the option to be exercised on or before April 20, 1977, and a first refusal thereof for an additional period ending June 30, 1977.

First Mortgage Investors' obligations under the contract were subject to the following condition among several:

(c) FMI shall have acquired good title to all fixtures and personal property located upon, or used in connection with the operation of the properties, free and clear of all liens, encumbrances or interests except liens having priority over the lien of FMI on the date hereof.

It is to be noted that this language would normally include the utility deposits, nothing appearing to show a different intent. They are "personal property ... used in connection with the operation of the properties".

In pursuance of the settlement agreement, Pacific American filed in the receivership proceedings in the Jackson County Circuit Court and the Clay County Circuit Court pleadings entitled, "Consent and Stipulation of Defendant ... in Lieu of Answer". These documents contained the following provisions:

Defendant consents to and approves the initiation of the proceedings; the appointment of the receiver herein; and the operations and conduct of the receiver throughout the pendency of the proceedings. 3, Defendant consents and stipulates to the termination of the receivership herein and to the release of all bonds of the receiver without further notice to defendant at such further time as plaintiffs in their sole discretion determine to be appropriate; and 4, Defendant expressly waives any and all rights which it may presently have to object to any aspect of this proceeding as well as any right to seek appellate relief or review of

any determination, order, judgment or other ruling made herein.

These pleadings were filed July 1, 1976.

On January 19, 1977, the trial court entered an order entitled, "Order Approving Termination of Possession", in which it "confirmed K.P. Management Corporation's transferring possession of all the real and personal property, known as the Holiday Inn ... to the present owner of the premises, Kansas City Inns, Inc., as of December 28, 1976".

█ It is perfectly plain to us, as it evidently was to Judge Mauer, that it was the parties' intention by the settlement agreement to include the utility deposits among the personal property conveyed from Pacific American to First Mortgage Investors. We have already held that the deposits were included in the general security agreement as a part of the collateral. We have noted also that the receiver had received the deposits as a part of the assets of the properties and had specifically itemized them in its periodic accountings filed with the court. The deposits were treated as a part of the assets of the business with which the receiver was charged. In approving the receiver's stewardship, Pacific American made no exception or complaint about the $34,000 in deposits. Also, in referring repeatedly to "all fixtures and personal property located upon, or used in connection with the operation of the properties", an inclusive phrase viewed in the parties' circumstances when the contract was executed, the plainly discernible purpose of the parties was to include that personal property described in the security agreement and in the receiver's settlements. Its effect was to relinquish to the plaintiffs all of Pacific American's claim to the deposits.

The judgment is affirmed.